UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

RICHARD E. GURULE,                                       Case No. 2:15-cv-02260-MC

        Plaintiff,                                            OPINION AND ORDER

    v.

JERI TAYLOR; D. WETTLAUFER;
D. LOZIER; W. POWELL; J. WALKER;
T. LEMENS; GARRETT LANEY; N.
SOBOTTA; M. NOFZIGER; CHRIS
GOVE; J. DAFORE; S. SHELTON; M.
NOOTH; M. GOWER; COLLET PETERS;
L. BEAMER; H. NEVIL; L. WILLIAMSON;
T. KELLY; JOHN DOE; S. FRANKE,

        Defendants.

MCSHANE, District Judge:

    Plaintiff, an inmate at the Eastern Oregon Correctional Institution (EOCI), filed suit against defendants pursuant to 42 U.S.C. § 1983 and alleged deliberate indifference to his serious medical needs and violations of his rights to due process. Defendants now move for summary judgment under Federal Rule of Civil Procedure 56 on all claims. Plaintiff did not respond to defendants' motion. For the reasons set forth below, the motion is granted.

1 – OPINION AND ORDER

BACKGROUND

On March 17, 2015, plaintiff received a Misconduct Report charging him with disciplinary violations of Distribution I and Racketeering. Compl. at 5 (ECF No. 2) & Ex. A. Plaintiff was accused of "cheeking" his medications, taking them to his cell, and distributing the medications to other inmates in exchange for canteen items. *Id.* Apparently, "cheeking" is the act of hiding medication in the mouth. During the course of the investigation, correctional officials found over $270 worth of canteen items in plaintiff's area, even though plaintiff had not purchased items at the canteen for more than two years. *Id.* Ex. A.

On March 24, 2015, plaintiff appeared at a disciplinary hearing on the charges. During the hearing, plaintiff "indicated he received payment for services provided to inmates in the form of canteen although he explained this was for art work." *Id.* Ex. B. The hearings officer dismissed the racketeering charge and found plaintiff had committed Distribution I by distributing his medications to other inmates in exchange for canteen items. *Id.* In making her decision, the hearings officer relied on information from confidential informants (CIs), whose testimony corroborated the allegations and narrative described in the misconduct report. *Id.*; Nevil Decl. ¶ 5 & Att. 3 at 14. Pursuant to policy of the Oregon Department of Corrections (ODOC) and for the safety of the CIs, their identities and verbatim testimony were not made available to plaintiff. Nevil Decl. ¶ 6 & Att. 3 at 14.

On March 30, 2015, EOCI medical staff was informed of the disciplinary decision against plaintiff. Lozier Decl. ¶ 4. In response, Nurse Practitioner Deena Lozier discontinued plaintiff's prescription for Neurontin and Tramadol and alternative medications were prescribed to treat plaintiff's rheumatoid arthritis. *Id.* ¶¶ 4, 8. Plaintiff objected to the discontinuation and asserted that the disciplinary decision was based on false information.

2 – OPINION AND ORDER

On April 15, 2015, Dr. Leland Beamer examined plaintiff. He noted that plaintiff exhibited no clinical symptoms of rheumatoid arthritis and found no need to renew plaintiff's prescriptions for Neurontin or Tramadol at that time. *Id.* ¶ 10.

On April 18, 2015, plaintiff reported a rash, vomiting, diarrhea, and itching. *Id.* ¶ 11. Plaintiff was given a Benadryl injection and scheduled for a follow-up examination. *Id.*

On April 23, 2015, plaintiff complained of a rash, itchy throat, diarrhea, and vomiting and believed he was suffering withdrawal from Neurontin and Tramadol. Lozier Decl. ¶ 12. The next day, plaintiff was examined by EOCI staff and offered a liquid diet, which he declined. *Id.* ¶ 13.

On April 29, 2015, Dr. Beamer examined plaintiff and discontinued all medications in response to plaintiff's possible adverse drug reaction. *Id.* ¶ 14.

In the meantime, plaintiff sought administrative review of the disciplinary decision. Nevil Decl. ¶ 7 & Att. 3 at 1-4. On review, the Inspector General returned the case to the hearings officer "to reopen to address more appropriate rule(s), and sanctions." Compl. Ex. D.

On May 27, 2015, a second disciplinary hearing was conducted and the hearings officer found that plaintiff had committed the violations of Distribution II and Racketeering. Nevil Decl. ¶ 8 & Att. 2 at 2-3; Compl. Ex. E.

On June 7, 2015, plaintiff sought administrative review of the second disciplinary decision. Nevil Decl. ¶ 12 & Att. 3 at 25-31. The Inspector General affirmed the decision. Compl. Ex. F at 4.

On June 9, 2015, plaintiff was examined by Dr. Dewsnup, who prescribed an Enbrel injection "continuous for 12 months." Lozier Decl. ¶ 16.

On July 17, 2015, Dr. Dewsnup examined plaintiff again and considered his subjective pain complaints. *Id.* ¶ 17. Although Dr. Dewsnup found no clinical symptoms, he renewed plaintiff's prescriptions for Tramadol and Neurontin after expiration of the six-month restriction on those medications. *Id.*

On July 22, 2015, the Hearings Administrator reviewed the second disciplinary decision and rejected plaintiff's claims of abuse of administrative authority by the hearings officer and other correctional officials. Nevil Decl. ¶ 13 & Att. 3 at 21-24.

On December 1, 2015, plaintiff filed this action.

## DISCUSSION

Plaintiff alleges that the disciplinary hearing and findings violated his procedural due process rights under the Fourteenth Amendment and that the discontinuation of his pain medication constituted deliberate indifference to his serious medical needs under the Eighth Amendment.[1]

Defendants now move for summary judgment on several grounds.[2] To prevail, defendants must show that there is no genuine dispute as to any material fact and they are entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The court must construe the evidence and draw all reasonable inferences in the light most favorable to plaintiff. *Torres v. City of Madera*, 648 F.3d 1119, 1123 (9th Cir. 2011).

---

[1] Plaintiff also alleges that his due process rights were violated by the manner in which his grievances were processed. This allegation does not state a cognizable claim. *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003) (explaining that "inmates lack a separate constitutional entitlement to a specific prison grievance procedure").

[2] In addition to the grounds discussed, defendants argue that plaintiff alleges no personal involvement by defendants Peters, Franke, Gower, Nofziger, Nooth, Laney, Taylor, Williams, Dafoe, Taylor, Walker, Lemens, Powell, Sobotta, and Shelton and cannot sustain claims against them. Defendants are correct. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (liability under § 1983 arises upon a showing of personal participation by each defendant).

4 – OPINION AND ORDER

Notably, plaintiff did not respond to defendants' motion, despite receiving a summary judgment advice notice and numerous extensions of time in which to respond. (ECF Nos. 24, 27, 33, 37, 41, 44) Accordingly, the facts asserted in defendants' motion and accompanying declarations have not been controverted.

   A. Due Process

Oregon inmates who receive a major misconduct report have the right to a disciplinary hearing. *See* Or. Admin. R. 291-105-0026; *see also Serrano v. Francis*, 345 F.3d 1071, 1077 (9th Cir. 2003) ("Under the Fourteenth Amendment's Due Process Clause, a prisoner is entitled to certain due process protections when he is charged with a disciplinary violation."). Nonetheless, prison "disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). Instead, due process requirements are met if the inmate receives: 1) advance written notice of the charges and the evidence against him; 2) an opportunity to present documentary evidence and witnesses; 3) legal assistance if the charges are complex or the inmate is illiterate; 4) a written statement describing the reasons for the disciplinary action; and 5) a disciplinary decision supported by "some evidence in the record." *Id.* at 563, 565-66, 570; *Superintendent v. Hill*, 472 U.S. 445, 454-55 (1985).

Plaintiff alleges that he did not receive adequate notice of the charges or the evidence against him, and that the second disciplinary decision was unsupported by evidence and lacked a sufficient explanation. Compl. at 5-13. Plaintiff also implies that the hearings officer delayed his second disciplinary hearing and found a Racketeering violation in retaliation for plaintiff's successful administrative review of the first hearing. *Id.* at 10-12. I find no due process violation.

First, the Misconduct Report adequately informed plaintiff of the nature of the charges and evidence against him. The report indicated that plaintiff had been cheeking and distributing his medications in exchange for canteen items and that a large amount of canteen items had been found in his cell. Granted, plaintiff was not informed that CIs provided the information contained in the report and he was not allowed to review such evidence. *See* Or. Admin. R. 291-105-0036(3)(a) ("Confidential information may be summarized for the inmate at the time of his/her hearing, without releasing the confidential information verbatim or the name of a confidential informant."). Regardless, plaintiff was well aware of the charges and evidence against him, particularly when the case was eventually reopened and a second hearing was held.

Second, the disciplinary decision was supported by "some evidence." The hearings officer found that plaintiff committed Distribution II and Racketeering. "An inmate commits Distribution II if he/she…distributes…contraband that creates a threat to the safety, security and orderly operation of the facility." Or. Admin. R. 291-105-0015(4)(g)(A). Contraband includes "[a]ny article or thing" which an inmate is prohibited from possessing, including "items of barter (such as...canteen items not purchased by the inmate)" and "unauthorized medication." *Id.* 291-105-0010(6), 291-105-0015(e)(A). "An inmate commits Racketeering if he/she engages in illicit activity that is carried out for the purpose of personal or financial gain through acts of crime." *Id.* 291-105-0015(4)(n).

As described above, multiple CI statements indicated that plaintiff would cheek his medications and exchange them for canteen items. The hearings official found the CIs' testimony to be credible, noted the canteen items found in plaintiff's cell, and considered plaintiff's past violations involving similar behavior. Comp. Ex. E. Accordingly, "some evidence" supported the disciplinary decision.

Finally, plaintiff submits no credible evidence of bias or retaliation on the part of the hearings officer. Although the Racketeering charge was dismissed after the first disciplinary hearing, the hearings officer was entitled to reconsider the charge after the case was reopened. Nevil Decl. Att. 3 at 22-23. In sum, the evidence shows that no due process violation occurred, and defendants are entitled to summary judgment on this claim.

B.  Deliberate Indifference to Serious Medical Needs

Plaintiff next alleges that the discontinuation of his medications exhibited deliberate indifference to his serious medical needs. *See Estelle v. Gamble*, 429 U.S. 97, 103 (1976) ("An inmate must rely on prison authorities to treat his medical needs"). Specifically, plaintiff alleges that defendants denied and interfered with his necessary medical care based on the false accusations against him.

To sustain a claim for deliberate indifference to his serious medical needs, plaintiff must establish: 1) the existence of "a serious medical need"; and 2) "the defendant's response to the need was deliberately indifferent." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (citing *Gamble*, 429 U.S. at 104). "A 'serious' medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" *Doty v. Cnty. of Lassen*, 37 F.3d 540, 546 (9th Cir. 1994) (citation omitted). Deliberate indifference is shown when a prison official knew that a prisoner faced a "substantial risk of serious harm" and failed to take reasonable measures to abate the risk. *Farmer v. Brennan*, 511 U.S. 825, 847 (1994).

Here, no evidence suggests deliberate indifference by defendants. Plaintiff's prescription was discontinued when he abused it, and he was prescribed alternate medications and received other treatment to address his pain. *See* Lozier Decl. ¶¶ 4, 7-9, 16, 21-22. Further, plaintiff was

7 – OPINION AND ORDER

immediately examined after reporting adverse effects resulting from the new medications. *Id.*
¶¶ 11-14. Ultimately, plaintiff's prescriptions for pain medication were renewed after completion of the six-month restriction period. *Id.* ¶ 17. This evidence refutes any allegation that defendants disregarded a known risk to plaintiff's health.

While plaintiff may believe that he should have received different medication, it is well established that negligence, inadvertence, or differences in judgment between an inmate and medical personnel do not rise to the level of a constitutional violation. *Estelle*, 429 U.S. at 104-06. Accordingly, defendants are entitled to summary judgment.

## CONCLUSION

Defendants' motion for summary judgment (ECF No. 21) is GRANTED, and this case is DISMISSED. Any appeal from the judgment dismissing this case would be frivolous and not taken in good faith. Therefore, plaintiff's in forma pauperis status should be revoked.
IT IS SO ORDERED.

DATED this  30th  day of May, 2018.


                               s/ Michael J. McShane
                               Michael J. McShane
                               United States District Judge